FILED
2015 Sep-15 PM 02:24
U.S. DISTRICT COURT
N.D. OF ALABAMA

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

ANGELA MARIE SNYDER,
Plaintiff,
v.
SOCIAL SECURITY ADMINISTRATION, COMMISSIONER,
Defendant.

Case No. 2:14-cv-01561-SGC

**MEMORANDUM OPINION**

The plaintiff, Angela Marie Snyder, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Ms. Snyder timely pursued and exhausted her administrative remedies, and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3). The parties have consented to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c). (Doc. 10).

## I. FACTS, FRAMEWORK, AND PROCEDURAL HISTORY

Ms. Snyder was born in 1985 and has a high school education. (R. 20, 109). Her past work experience includes employment as a cashier, waitress, stock clerk, and fast food worker. (R. 135). Ms. Snyder alleged she became unable to work on December 13, 2010, due to severe back problems, bi-polar disorder, and diabetes. (R. 111, 401).

When evaluating the disability of individuals over the age of eighteen, the regulations prescribe a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920; *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The first step requires a determination of whether the claimant is performing "substantial gainful activity." 20 C.F.R. §§

404.1520(a)(4)(i). If the claimant is engaged in substantial gainful activity, he or she is not disabled and the evaluation stops. *Id.* If the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to consider the combined effects of all the claimant's physical and mental impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). These impairments must be severe and must meet the durational requirements before a claimant will be found disabled. *Id*. The decision depends on the medical evidence in the record. *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971). If the claimant's impairments are not severe, the analysis stops. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Otherwise, the analysis continues to step three, at which the Commissioner determines whether the claimant's impairments meet the severity of an impairment listed in 20 C.F.R. §§ pt. 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairments fall within this category, the claimant will be found disabled without further consideration. *Id.* If the impairments do not fall within the listings, the Commissioner determines the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e).

At step four the Commissioner determines whether the impairments prevent the claimant from returning to past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, he or she is not disabled and the evaluation stops. *Id.* If the claimant cannot perform past relevant work, the analysis proceeds to the fifth step, at which the Commissioner considers the claimant's RFC, as well as the claimant's age, education, and past work experience to determine whether he or she can perform other work. *Id.*; 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can do other work, he or she is not disabled. *Id.*

Applying the sequential evaluation process, the Administrative Law Judge ("ALJ") found Ms. Snyder had not engaged in substantial gainful activity since the alleged onset of her disability. (R. 15). At step two, the ALJ found Ms. Snyder's degenerative disc disease constituted a severe impairment. (*Id.*). However, the ALJ found Ms. Snyder's other claimed ailments were not severe because: (1) her diabetes mellitus was well-controlled; and (2) her medically determinable impairment of depression did not cause more than minimal limitation in her ability to work. (*Id.* at 15-16).

At step three, the ALJ found Ms. Snyder did not have an impairment or combination of impairments meeting or medically equal to any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 17). Specifically, the ALJ determined Ms. Snyder failed to satisfy the listing requirements for disorders of the spine. (*Id.*).

Before proceeding to step four, the ALJ determined Ms. Snyder retained the RFC to perform sedentary work with the following restrictions: (1) only occasional stooping, kneeling, crouching, crawling, and climbing ramps and/or stairs; (2) no more than frequent overhead reaching with her left arm; (3) never climbing ladders, ropes, or scaffolds; and (4) no exposure to unprotected heights and dangerous machinery. (R. 17). In reaching this conclusion, the ALJ considered Ms. Snyder's symptoms, the medical record, and opinion evidence. (*Id.*). Regarding opinion evidence, the ALJ assigned no weight to the opinion of the state agency single decision maker, who opined that Ms. Snyder could perform limited medium work. (R. 19). The ALJ assigned "some weight" to the opinion of Ms. Snyder's treating physician, Dr. Leigh Copeland, which imposed severe limitations on Ms. Snyder's ability to perform even sedentary work. (*Id.*). The ALJ concluded that, while Ms. Snyder's medically determinable impairments could reasonably be expected to cause some of the symptoms alleged, her testimony concerning the

severity, persistence, and effects of these symptoms was not credible in light of the medical record. (*Id.* at 18).

At step four, the ALJ determined Ms. Snyder was unable to perform her past relevant work. (R. 19-20). At step five, the ALJ noted Ms. Snyder was a "younger individual" as defined in the regulations and had at least a high school education. (*Id.* at 20). The ALJ also found transferability of job skills was not an issue and concluded that, even though Ms. Snyder could not perform the full range of sedentary work, she was capable of performing jobs in the national economy, including ticket checker, charge account clerk, and telephone clerk. (*Id*. at 20-21). In reaching this conclusion, the ALJ relied on the testimony of a vocational expert regarding the effect of the limitations imposed by Ms. Snyder's RFC. (*Id.*). The ALJ concluded by finding Ms. Snyder "[was] not under a 'disability,' as defined in the Social Security Act" since the alleged onset date. (R. 21).

Ms. Snyder appealed to this court on August 11, 2014. (Doc. 1). Ms. Snyder filed a brief in support of her appeal (Doc. 9), and the Commissioner responded (Doc. 12). All deadlines for submitting briefs have passed, and this matter is ripe for adjudication.

## II. Standard of Review

The court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of review is limited to determining: (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner; and (2) whether the correct legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). The court approaches the factual findings of the Commissioner with deference but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). The court may not decide facts, weigh evidence, or

substitute its judgment for that of the Commissioner. *Id.* "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen,* 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n,* 383 U.S. 607, 620 (1966)). Indeed, even if the court finds the evidence preponderates against the Commissioner's decision, it must affirm if the decision is supported by substantial evidence. *Miles,* 84 F.3d at 1400. No decision is automatic, however, for "despite this deferential standard [for review of claims] it is imperative that the Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen,* 815 F.2d 622, 624 (11tj Cir. 1987). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler,* 748 F.2d 629, 635 (11th Cir. 1984).

## III. Discussion

Ms. Snyder argues the ALJ's decision should be reversed for two reasons. First, Ms. Snyder contends the ALJ failed to properly evaluate Dr. Copeland's medical opinion regarding the effects of her impairments. (*See* Doc. 9 at 7-10). Next, Ms. Snyder argues the ALJ did not properly apply the standard used to evaluate claims of disability based on pain. (*See id.* at 10-15). Each argument is addressed in turn.

### A. Dr. Copeland's Medical Opinion

The weight to be afforded a medical opinion regarding the nature and severity of a claimant's impairments depends upon the examining and treating relationship between the medical source and the claimant, the evidence the medical source presents to support the opinion, the opinion's consistency with the record as a whole, the specialty of the medical source, and

other factors. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c). Generally, greater weight is given to the opinions of treating sources than the opinions of one-time examiners. *See* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *Crawford v. Commissioner of Social Security*, 363 F.3d 1155, 1161 (11th Cir. 2004). More weight is also given to an opinion that is well supported and explained. *See* 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3). Additionally, more deference is given to an opinion that is consistent with the record as a whole. *See* 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4). Finally, the opinion of an examining physician is subject to heavy skepticism when it is based primarily on the plaintiff's subjective complaints but is unsupported by the medical evidence. *Crawford*, 363 F.3d at 1159-60.

A treating physician's testimony receives "substantial or considerable weight unless 'good cause' is shown to the contrary." *Crawford*, 363 F.3d at 1159 (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)) (internal quotations omitted). Furthermore, "good cause" exists for an ALJ to not give a treating physician's opinion substantial weight when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004) (*citing Lewis*, 125 F.3d at 1440); *see also Edwards v. Sullivan*, 937 F.2d 580, 583-84 (11th Cir. 1991) (holding that "good cause" existed where the opinion was contradicted by other notations in the physician's own record).

Underpinning all of the considerations mentioned above is the fact that opinions such as whether a claimant is disabled, the claimant's residual functional capacity, and the application of vocational factors "are not medical opinions, . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e., that

would direct the determination or decision of disability." 20 C.F.R. §§ 404.1527(d), 416.927(d). It is the ALJ's responsibility to assess a claimant's residual functional capacity. *See, e.g.*, 20 C.F.R. § 404.1546(c).

On June 2, 2011, Dr. Copeland completed a Physical Capacities Exam ("PCE"), opining Ms. Snyder could: (1) lift and/or carry five pounds occasionally; (2) sit for thirty minutes in an eight hour day; (3) stand for thirty minutes in an eight hour day; (4) never perform pushing or pulling movements; (5) never perform gross manipulation; (6) never bend, stoop, or reach; and (7) never be exposed to dust, allergens, fumes, or hazardous machinery. (R. 361). Dr. Copeland further opined: (1) Ms. Snyder's pain was intractable and virtually incapacitating; (2) increased physical activity would cause an increase of pain and necessitate bedrest and/or medication; and (3) side-effects from drugs used to treat Ms. Snyder's symptoms would be severe. (*Id.* at 362-63).

In addition to completing the PCE, Dr. Copeland also examined Ms. Snyder on June 2, 2011. Dr. Copeland diagnosed Ms. Snyder with chronic lower back pain, degenerative disc disease, and depression. (R. 401). Dr. Copeland advised Ms. Snyder not to return to work due to her back pain. (*Id.*). An August 2012 MRI revealed a broad-based annular bulge with a central annular tear at L3-4 and postoperative findings at L4-5 with fluid collection around the laminotomy defect. (R. 430). Dr. Copeland diagnosed Plaintiff with a bulging lumbar disc and back pain. (*Id*. at 424).

As previously noted, the ALJ afforded Dr. Copeland's opinion "some weight," rather than the substantial weight typically afforded the opinion of a treating physician. In doing so, the ALJ noted inconsistencies between Dr. Copeland's opinion and the medical record. (R. 19). Specifically, the ALJ found that Dr. Copeland's PCE imposed restrictions more severe than those

Ms. Snyder self-reported. (*Id.*). Additionally, while the ALJ acknowledged imaging showing a pathological component to Ms. Snyder's back pain, he concluded Dr. Copeland's opinion was overly reliant on Ms. Snyder's subjective complaints, given the "fairly mild" abnormalities revealed by the images. (*Id*.). In light of the inconsistencies noted by the ALJ and the standard applicable to this appeal, the undersigned concludes the ALJ had good cause to discount Dr. Copeland's opinion. Accordingly, the ALJ's assignation of less than controlling weight to Dr. Copeland's opinion does not warrant reversal.

**B. Ms. Snyder's Allegations of Pain**

Plaintiff also asserts the ALJ improperly evaluated her subjective complaints of pain. Specifically, Ms. Snyder alleges that "the ALJ's decision is contrary to Supreme Court and Eleventh Circuit case law [because it fails] to properly consider evidence of record establishing a disabling impairment." (Doc. 9 at 14). Subjective testimony of pain and other symptoms may establish the presence of a disabling impairment if it is supported by medical evidence. *See Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995). To establish disability based upon pain and other subjective symptoms, "[t]he pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (citing *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)); *see also Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986).

An ALJ may discredit a claimant's subjective testimony of pain and other symptoms if he articulates explicit and adequate reasons for doing so. *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002); *see also* Soc. Sec. Rul. 96-7p, 1996 WL 374186 (1996) ("[T]he adjudicator

must carefully consider the individual's statements about symptoms with the rest of the relevant evidence in the case record in reaching a conclusion about the credibility of the individual's statements."). Although the Eleventh Circuit does not require explicit findings as to credibility, "the implication must be obvious to the reviewing court." *Dyer*, 395 F.3d at 1210 (quoting *Foote*, 67 F.3d at 1562). "[P]articular phrases or formulations" are not required, but the ALJ's credibility determination cannot be a "broad rejection which is not enough to enable the district court or this Court to conclude that the ALJ considered her medical condition as a whole." *Id*. (internal quotations and punctuation omitted).

Ms. Snyder's degenerative disc disease satisfies the "underlying medical condition" requirement of the pain standard. However, after reviewing the evidence, the ALJ determined Ms. Snyder's subjective complaints of pain were not entirely credible and were unsupported by the objective medical record. (R. 19). In particular, the ALJ found Ms. Snyder's conservative course of treatment for back pain undermined her testimony that she is essentially bed-ridden. (*Id.*). Additionally, the ALJ noted Ms. Snyder's medication regimen was at least somewhat effective in controlling her pain. (*Id.*). Finally, the ALJ found that the severity of pain described by Ms. Snyder was not supported by objective medical evidence, which showed a relatively non-advanced pathology. (*Id.*).

"[C]redibility determinations are the province of the ALJ." *Moore v. Barnhart*, 405 F.3d at 1212. If the ALJ "articulate[s] explicit and adequate reasons" for discrediting Plaintiff's testimony, he does not have to accept its accuracy. *Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991). Here, the ALJ satisfactorily explained why Ms. Snyder's complaints of pain were not entirely credible. This court can reverse such credibility determinations only when substantial evidence does not support the ALJ's position or when the ALJ applied incorrect legal

standards. Neither case is present here, and the ALJ's application of the pain standard does not warrant reversal.

## IV. Conclusion

Upon review of the administrative record, and considering all of Ms. Snyder's arguments, the court finds the Commissioner's decision is supported by substantial evidence and in accord with the applicable law. Accordingly, the Commissioner's decision is due to be affirmed.

A separate order will be entered.

**DONE** this 15th day of September, 2015.

STACI G. CORNELIUS
U.S. MAGISTRATE JUDGE